CHARLES WILSON *vs.* JOHN WILSON, Surviving Adm'r of JOHN WILSON.

The allowance for commissions made to a collector under letters *ad colligendum*, granted upon a deceased person's estate, ought to have no effect upon the commissions of the executor or administrator of the same estate. They are distinct and independent allowances for different services.

The law having fixed a *minimum* and a *maximum* rate of commission to be allowed to executors or administrators, and vested a discretion in the Orphans Court restricted only by those limits, an allowance by that court, of commissions within those rates, is not to be reviewed here. This court has no power to disturb such a decision.

Interest is not to be charged on money retained by an administrator with the sanction of the Orphans Court and consent of parties, to meet the future contingencies of the estate.

APPEAL from the Orphans Court of *Baltimore* county.

This was a petition filed by *Charles Wilson*, on the 2nd August, 1828, as one of the distributees of *John Wilson*, late of *Baltimore* county deceased, claiming his proportion of the estate. It charged that *John Wilson* died on the 1st of January, 1819; that *Michael Tiernan* and *William Murdock* obtained letters *ad colligendum* upon the estate of the deceased, and received a large sum of money on account thereof; that on the 11th of August, 1819, *John Wilson* and *Benjamin Sterett* were appointed administrators, and had little other trouble than to receive the estate from and pass receipts to the collector, and obtain discharges from the representatives; that a much larger commission had been allowed the administrators than the services rendered by them were really worth; that is to say, 7½ per cent. on $55,130, which with the allowance made to the collectors as

commission, exceeds 10 per cent. for that object; that the petitioner also was entitled to interest on $4000 for four years, which remained in the hands of *John Wilson* the defendant; that the defendant was about to settle another account and claim a further commission upon $8824 74, to which he is not entitled; because the whole of that sum was taken out in hardware by the petitioner, and that *John Wilson* had no trouble whatever, except in passing a receipt for the same. *Prayer*, that the defendant may discover what trouble he had in the settlement of the estate; that the commissions may be reduced, and *Wilson* charged with the amount disallowed in his next account; that he may settle another account, and for further relief, &c.

Copies of the accounts settled by the collector and administrators were filed with the petition, and which sustained the allegation of the amount of the commissions. The answer of *John Wilson* alleged, that by virtue of extraordinary diligence and perseverance on the part of the administrators, funds of large amount have been recovered from the collectors, and saved to the estate. That the collectors originally opposed the grant of letters, and shortly after their appointment collected $38,600, and appropriated the same to their private and individual use by investing the same in hardware and otherwise; that the collectors being applied to, refused or neglected to pay, and the administrators conceiving the estate in imminent peril of being lost, proceedings at law were instituted, and a decree obtained against the collectors; and finding it impossible to get the money, they were obliged to take such means as the collectors had it in their power to give; that a large portion of the estate was received in hardware, part of which, one of the administrators sold in the western country, making himself liable to the estate therefor, and for another part they procured purchasers; that as to the money retained by the administrators, it was done with the approbation of the court and consent of all parties, to meet the contingencies of unsettled claims and proceedings against

the debtors of the estate; that this defendant is willing to settle the estate so soon as the petitioner shall pay the sum of $2382 02, which he owes the estate, and has no objection that the court may diminish the commissions, if in their judgment just and equitable.

The evidence in the cause sustained the allegations of the defendant.

The *Orphans Court* decreed that the commissions allowed the administrators should not be reduced, nor the defendant charged with interest upon the sum retained by him; and that the defendant should settle a final account.

The petitioner appealed to this court.

The cause was argued before BUCHANAN, Ch. J., STEPHEN, and DORSEY, J.

By *Scott* for the appellant, and *Johnson* for the appellee.

BUCHANAN, C. J., delivered the opinion of the court.

We do not think either of the points raised in this case can be sustained.

The 14th sect. of the act of 1798, ch. 101, sub-ch. 3, authorises the issuing letters *ad colligendum* by the Orphans Courts of the several counties in the cases specified, and the 18th section authorises an allowance to a collector for his whole trouble, of a commission on the amount of the property and debts actually collected and delivered to an executor or administrator, at the discretion of the court, not exceeding three *per cent.* And the 2nd section of the 10th sub-ch. authorises the allowance to an executor or administrator of a commission at the discretion of the court, not under five nor more than ten per cent., on the amount of the inventory or inventories, excluding what is lost or has perished.

Here then were letters *ad colligendum* granted by the *Baltimore* county Orphans Court, and a commission of *three* per cent. allowed to the collectors, and letters of administration afterwards granted, and a commission allowed

to the administrators of 7½ per cent. on the amount received by them from the collectors and accounted for, amounting the two commissions together to 10½ per cent. which it is supposed exceeded the commissions that the Orphans Court was authorised to allow, by one half per cent.; on the ground that the whole amount of commissions to be allowed, cannot exceed 10 *per cent.*

But it is perfectly clear that the allowance to be made of a commission to a collector, and that to an executor or administrator, are distinct and independent allowances.

The allowance to a collector is for his trouble, &c. which has nothing to do with the trouble or duties of executor or administrator; and the allowance to an executor or administrator is for his trouble and responsibility, for which no allowance made to a collector, can be any remuneration.

It is therefore no objection, that the commission allowed in this case to the collectors, and that allowed to the administrator, amount together, to more than 10 *per cent.* The restriction is, that a collector shall not be allowed more than three, nor an executor or administrator more than 10 per cent.

But it is contended, that the commission of 7½ per cent. to the administrator, is a greater allowance than ought to have been made.

The law has fixed a *minimum* of *five,* and a *maximum* rate of commission of *ten per cent.* to be allowed to executors and administrators, with a discretion vested in the Orphans Court restricted only by those limits, and the court in allowing a commission of 7½ *per cent.* having acted within the scope of that discretion, we do not think we have any power to disturb the decision, or to review what has been done in that respect. The various circumstances determining the amount of the commission proper to be allowed, cannot appear to this court, and every case must be governed by its own peculiar circumstances, subject only to the restrictions already mentioned. But if the allowance of commission within the prescribed limits was a

fit subject of appeal, there is nothing in the testimony accompanying the record, showing the allowance made to the administrators to be too great.

The claim to interest on the amount retained by the administrators cannot be maintained; the money was retained with the consent of all the parties concerned, under the sanction of the Orphans Court, to meet the contingency of a suit with the collectors, which appeared to be a matter not unlikely to happen before the accounts should be finally closed. The decree is affirmed with costs.

DECREE AFFIRMED.