IN RE NETTIE E. WILMER, GUARDIAN OF MARGARET C. GREENWELL ET AL., PETITIONER.

*Guardian and Ward—Allowance—Maintenance and Education—Review.*

The discretion vested by Code, Art. 93, Sec. 165, in the orphans' court, as regards the annual expenditure for the maintenance and education of the infant, is not an arbitrary or capricious discretion, but a sound judicial discretion, to be exercised in accordance with established legal principles, and the action of the court is consequently reviewable on appeal.

pp. 31, 32

An irreviewable discretion is given to the court only when it is inherent in the subject-matter of the discretion, where the final conclusion of the court must be a matter of individual opinion based upon facts appearing upon its records or within the official knowledge of the court, or where the character of the discretion is unmistakably defined by the statute conferring the power.

p. 32

Upon a petition filed by a guardian asking an allowance of a named amount for the maintenance and education of the wards, her own children, the orphans' court should not pass an order allowing a less amount, without some inquiry into the situation and needs of the wards, and some investigation of the facts alleged in the petition, the petitioner being in a position to know the requirements of her children and the expenses incident to their maintenance and support in their station of life.

p. 33

Since Code, Art. 93, Sec. 180, provides that where the mother is left the natural guardian of her infant children, she is to be allowed "all such charges, expenses and commissions as are or may be authorized by law in the case of other guardians," the fact that they live with her is not to be considered in determining the allowance to be made for their maintenance and education.

p. 34

The law requiring the orphans' court at its discretion to "ascertain" the sum to be annually expended for the education of the ward, it is incumbent on the court, having before it the

data and facts necessary to enable it to reach an intelligent conclusion, to ascertain and determine what sum the guardian may spend for the ward's education, and this duty would not be discharged by permitting the guardian to determine in her discretion the amount to be allowed for such purpose.     p. 35

*Decided June 18th, 1920.*

Appeal from the Orphans' Court for St. Mary's County.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

· *L. Allison Wilmer,* with whom were *Wilmer & Ching* on the brief, for the appellant.

OFFUTT, J., delivered the opinion of the court.

William F. Greenwell, a resident of St. Mary's County, died July 4th, 1907, possessed of a considerable estate, consisting of real and personal property, and leaving to survive him four children, Margaret C. Greenwell, born November 26th, 1903, Maria E. Greenwell, born May 7th, 1905, Eleanor F. Greenwell, born June 30, 1906, and Wilhelmina F. Greenwell, born October 16th, 1907, and a widow, the appellant, who in October, 1914, married L. Allison Wilmer.

The appellant was appointed one of the administrators of his estate, and later with Fabian Gough, since deceased, was appointed guardian of her infant children and charged with the management of the estate which they took as the heirs at law of their father, her late husband. From time to time accounts were filed by her as such guardian, in the Orphans' Court of St. Mary's County, in which allowances were made and ratified for various items of expense which she had incurred for the care, support and education of the children, including annual allowance for their board, lodging and clothes, and on February 9th, 1920, she filed her "fourth guardian's account," and in connection with it submitted a

form of order, providing for an increase in the annual allowance for the board and lodging of the children, and authorizing the appellant to make expenditures "for their schooling, school expenses and proper and suitable clothing of each according to the needs and condition in life of the ward," and in connection with this account and order, on March 9th, 1920, she filed a petition asking for the passage of an order in the form submitted and the approval of her fourth guardian's account and, on March 15th, the Orphans' Court, without any testimony appearing to have been taken or any further proceedings having been had, refused to pass an order in the form submitted, but did pass an order approving, except as to a minor item, the account, and limiting the expenditure to be made for the maintenance of the children in this language "that in lieu of the allowance heretofore made said guardian for maintenance, education, etc., of her said wards, she be allowed from the first day of January, 1920 the sum of fifteen dollars per month for the board and lodging including laundry, lights and fuel of each of the said wards, during the time the ward shall be and remain at her home at Leonardtown." The order further provided that "the item for an additional sum for schooling, school expenses and clothing" was rejected for the reason that the allowance asked was unlimited. From that order the present appeal was taken. The appeal presents two questions: first, whether this Court can review the order appealed from, and if it can, then whether the lower Court erred in its passage.

Taking the questions in the order in which they occur, we are of the opinion that this Court does have the power to review the order of the Orphans' Court. By Section 165 of Article 93, Code Public General Laws, it is provided that in the administration of guardians' estates, the Orphans' Court once in each year or oftener "shall ascertain at its discretion the amount of the sum to be annually expended in the maintenance and education of the infant." The discretion thus reposed in the court is not an arbitrary or a capri-

cious discretion, but a sound judicial discretion to be exercised in accordance with established legal principles applied to the facts of the particular case. In construing what is now Section 237 of the same article, which provides that on the application of any infant suggesting improper conduct or mental or physcal unfitness in any guardian whatever, the court may "inquire into the same, and, at its discretion remove such guardian * * *" it was held that the expression "in their discretion" was not intended to and did not vest in the court an absolute and arbitrary discretion, but a "sound legal discretion to be used conformably to the settled rules of law—to be exercised if the facts warrant it, to be withheld, if they do not—and if erroneously exerted in either direction is subject to review on appeal." *Macgill* v. *McEvoy,* 85 Md. 291; *Owen* v. *Pye,* 115 Md. 407. Nor is there any reason for any different construction of the phrase in the section now under consideration than that given it in Section 237. The exercise of the power thus vested in the Orphans' Court may be of the most vital and permanent importance to the guardian as well as to the ward, and affect not only the present comfort and welfare of the ward, but his entire future career and position as well. It was certainly never intended that a power so important and so grave in its possible consequences should not be subject to review upon appeal. Both reason and authority deny such a construction. There are cases in which such a "broad irreviewable" discretion is vested in the Orphans' Court, but the distinction between such cases and the case now under consideration is obvious and is clearly pointed out by Judge Thomas in *Re Estate of Watts,* 108 Md. 700. Such a discretion is given to the court only when it is inherent in the subject matter of the discretion, as in the case last cited, where the final conclusion of the court must be a matter of individual opinion based upon facts appearing upon its records or within the official knowledge of the court, or where the character of the discretion is unmistakably defined by the statute conferring the

power. We are of the opinion, therefore, that the order appealed from may be reviewed by this Court.

Coming then to the propriety of the order itself, it appears from the record that it was passed upon the petition and the affidavit thereto alone, without any testimony having been adduced in support or contradiction of the averments thereof, and without any opportunity having been afforded the petitioner to submit proof concerning them. But it is manifest that, whether such opportunity was afforded or not, such an order, affecting the welfare and education of wards subject to the jurisdiction of the court, ought not to have been passed without some inquiry into their situation and needs, and some investigation of the facts alleged in the petition filed by their guardian, who was in a position to know the requirements of her children and the expenses incident to their maintenance and support in their station of life.

The petition presents a detailed history of the administration of the guardianship estate, much of which is immaterial to the consideration of the question now before the Court. It is sufficient to say that in it is alleged that the income of the estate from March 27th, 1917, to January 1, 1920, was $5,322.51, and that during the same period $2,750 was spent with the approval of the Orphans' Court for the maintenance of the four children, a detailed account of these receipts and disbursements being set forth in the fourth guardian's account filed with the petition. In addition to these items, there were allowances for certain school expenses of the children, some minor allowances for travelling expenses, and expenses incident to the administration and the preservation and care of the estate. It is further stated that the annual allowance for the maintenance and support of the children was at first $300 a year, and that as they grew older this allowance was increased until in 1917 it was fixed at $1,000 a year. The needs of the children and the expenses incident to their education and training naturally increased with their years, and the Court recognized that fact, as shown

by its approval of the increases in the annual allowance for their support. In 1920 the general increase in living expenses, in connection with the desirability of sending the oldest child to a more expensive school, had so increased the expense of maintaining and educating the children that the allowance of $1,000 a year for that purpose was no longer adequate. Under the circumstances the court was asked to pass an order in the form referred to above, authorizing the petitioner to expend $25 per month for the board, lodging and laundry of each child, and such sum for their clothing and education, as "she may eventually expend," according to their needs and condition in life. The court refused to pass this order but in lieu thereof passed the order now before us.

The passage of this order was not warranted by anything contained in the petition and there was nothing else before the court. That there had been a worldwide increase in the cost of living was common knowledge, and that the expense of maintaining and educating children increases as they grow older is a matter of general experience, and while, therefore, there may have been reason for increasing the allowance, there was apparently none for decreasing it. If therefore, the allowances previously made were proper they should not have been reduced without sufficient reason. Whether such a reason existed could not well have been determined without some examination of the manner in which the children were maintained and the cost of such maintenance. The fact that the children lived in the home of their mother, which appears to have been given some weight by the court, could not affect the question, because the law provides, where the mother is left the natural guardian of her infant children, she is to be allowed "all such charges, expenses and commissions as are or may be authorized by law in the case of other guardians." Art. 93, Sec. 180, Code of Public General Laws.

We are, therefore, of the opinion that the order should not have been passed until the court had informed itself by proper

evidence of what, under all the circumstances of the case, was a reasonable and proper allowance for the support of the children, but inasmuch as there is nothing before this Court upon which to base an opinion as to what would have been proper allowances to be made, the case will be remanded in order that testimony may be taken and such order then passed as may be warranted thereby.

The refusal of the court to ratify in advance expenditures contemplated by the guardian for the clothing and school expenses of the wards was clearly proper. The form of order proposed was entirely too broad. The court could not divest itself of the powers and duties imposed upon it by law, and yet that is just what it would have done had it ratified in advance any expenditures which the guardian in her discretion might deem proper to make for the clothing and school-expenses of the wards, and the effect of such an order would have been to substitute the discretion of the guardian for the discretion which the law has placed in the court. The law requires the court at its discretion to "ascertain" the sum to be annually expended for the education of the ward. This language means that, after having before it the data and facts necessary to enable it to reach an intelligent conclusion, it is the duty of the court to ascertain and determine what sum the guardian may spend for the education of the ward, and this duty would not be discharged by permitting the guardian to determine in her discretion the amount to be allowed for such purpose.

For the reasons stated the order appealed from will be reversed and the case remanded to the Orphans' Court of St. Mary's County, that such further proceedings may be had there as will conform to the views herein expressed. The costs to be paid from the estate.

*Order reversed and cause remanded for further proceedings.*